Loran W. ROBBINS, Harold J. Yates, Earl L. Jennings, Jr., Robert J. Baker, Arthur H. Bunte, Howard McDougall, R.V. Pulliam, and Marion Windstead, as Trustees of Central States Southeast and Southwest Areas Health and Welfare Fund, Plaintiffs,

v.

LABAR TRANSPORTATION CORPORATION, a corporation, Defendant.

No. 79–C–5228.

United States District Court, N.D. Illinois.

Dec. 7, 1984.

Coghlan, Joyce & Nellis, Chicago, Ill., for plaintiffs.

Daniel I. Schlessinger, Lord, Bissell & Brook, Chicago, Ill., for defendant.

## ORDER

CRABB, Visiting District Judge.

This is an action brought on December 12, 1979, by the plaintiff trustees of Central States Southeast and Southwest Areas Health and Welfare Fund seeking injunctive relief compelling defendant Labar Transportation Corporation to comply with its obligation to make employer contributions to an employee trust fund, instituted in accordance with a collective bargaining agreement between Labar and Local 512 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America (Local 512).

After a trial in which I found that defendant was under a valid and binding obligation to make contributions to its employee trust fund in the amounts sought by plaintiffs, I ordered the entry of judgment in favor of plaintiffs. Although the terms of the judgment are not spelled out in the judgment as it was entered, judgment consistent with the relief sought by plaintiffs would enjoin defendant permanently from failing to make contributions to its employee trust fund as required under the collective bargaining agreement and would require defendant to pay to plaintiffs the amount of the past due contributions it had failed to make, plus interest.

Plaintiffs filed a petition for an award of attorneys' fees pursuant to 29 U.S.C. § 1132(g) and, on March 9, 1984, I granted the petition and awarded the plaintiffs $18,-182.50 in attorneys' fees, directing that the fees be paid by April 13, 1984. As of July 20, 1984, defendant had not complied with that portion of the judgment requiring it to satisfy its obligation for past due contributions. Also, defendant had not complied with the order directing it to pay plaintiffs their attorneys' fees. This case is now before the court on plaintiffs' motion for an order to show cause why defendant should not be held in contempt for its failures to comply with the judgment of this court and to comply with the order awarding attorneys' fees.

Plaintiffs' motion raises two questions: 1) whether it is a proper use of the court's authority to proceed with a contempt proceeding against defendant for its failure to comply with the judgment of the court and 2) whether it is a proper use of the court's authority to proceed with a contempt proceeding against defendant for its failure to comply with the order of the court directing it to pay plaintiffs their attorneys' fees by April 13, 1984.

## I. Contempt for Failure to Comply with the Court's Judgment

■ In the federal courts, Rule 69(a), Federal Rules of Civil Procedure, dictates the procedure for enforcement of a money judgment in a civil case. In pertinent part, the rule provides:

Process to enforce a judgment for the payment of money shall be by writ of execution, *unless the court directs otherwise.* The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

(Emphasis added.) The "unless" clause in Rule 69 appears to give courts means other than execution to satisfy or compel a money judgment. However, it is understood that the use of such means should be confined to those situations in which execution would be an inadequate remedy. *See* 7 J. Moore, Moore's Federal Practice ¶ 69.03[2] at 69–10 (2d ed. 1984). "[A] federal court should not ... enforce a money judgment by contempt or methods [o]ther than a writ of execution, except in cases where established principles so warrant" as, for example, in a case in which a court has entered a money judgment against a fiduciary for breach of trust and the fiduciary has disobeyed the court's directions. *Id.* at 69–11.

A federal court's authority to hold a judgment debtor in contempt is not limited to the "unless" clause of Rule 69(a). Under 28 U.S.C. § 2007 and Rule 69(a), a judgment debtor may be imprisoned for contempt for nonpayment of a judgment if such a sanction is permitted under the law of the state where the court is sitting, which in this case is Illinois.[1] 7 Moore's Federal Practice, ¶ 69.04[2], at 69–21. However, 28 U.S.C. § 2007 provides that "[a] person shall not be imprisoned for debt on a writ of execution or other process issued from a court of the United States in any State where imprisonment for debt has been abolished." Section 14, Art. I of the Illinois Constitution provides that "[n]o person shall be imprisoned for debt unless he refuses to deliver up his estate for the benefit of his creditors as provided by law or unless there is a strong presumption of fraud."

■ Notwithstanding the disfavored nature of imprisonment for debt in Illinois, § 14, Art. 1 of the Illinois Constitution permits such imprisonment if there exists a "strong presumption of fraud" or if the judgment debtor has the ability to pay the judgment but refuses to do so. *See The People v. LaMothe,* 331 Ill. 351, 356, 163 N.E. 6 (1928): "No one should be imprisoned for a failure to pay money unless the evidence clearly shows that the party charged has the money within his power to pay, or that he had the money and wrongfully disposed of it."

Indeed, although a court sitting in Illinois may have the power to hold a defendant in contempt before other means of enforcement have been attempted if it determines that the defendant's failure to pay constitutes willful disobedience of a lawful judgment, it would be unusual to take such an action where there exist alternative means of enforcement, and it would be

---

1. 28 U.S.C. § 2007 reads:

(a) A person shall not be imprisoned for debt on a writ of execution or other process issued from a court of the United States in any State wherein imprisonment for debt has been abolished. All modifications, conditions, and restrictions upon such imprisonment provided by State law shall apply to any writ of execution or process issued from a court of the United States in accordance with the procedure applicable in such State.

(b) Any person arrested or imprisoned in any State on a writ of execution or other process issued from any court of the United States in a civil action shall have the same jail privileges and be governed by the same regulations as persons confined in like cases on process issued from the courts of such State. The requirements governing discharge are those that are applicable in such State. Any proceedings for discharge shall be conducted before a United States commissioner for the judicial district wherein the defendant is held.

done only in the most egregious cases, upon a finding that the failure to pay is the result of a "wrongful or illegal act or [the judgment debtor] has willfully placed himself in such a position," *Sullivan v. Sullivan*, 16 Ill.App.3d 549, 552, 306 N.E.2d 604 (1973). "In the enforcement of this constitutional provision [Ill. Const. art. I, § 14] every doubt should be resolved in favor of the liberty of the citizen." *Tudor v. Firebaugh*, 364 Ill. 283, 288, 4 N.E.2d 393 (1936).

Clearly, if the judgment herein were only one for money damages, plaintiffs would not be entitled to seek to enforce the judgment through invocation of the court's contempt powers under Rule 69(a), Federal Rules of Civil Procedure, or under 28 U.S.C. § 2007. Although the parties seem to have assumed that the judgment was of such a nature and have framed their arguments accordingly, I believe that they have misconstrued both the nature of the judgment and the national labor policies implicated in the action.

Under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219, it has been held to be error for a district court to refuse to hold an employer in civil contempt for continuing to withhold unpaid wages due his former employees. *See, e.g., Hodgson v. Hotard*, 436 F.2d 1110 (5th Cir.1971): " 'The purpose of the injunction to restrain the withholding of wages due is not to collect a debt owed by an employee to his employer but to correct a continuing offense against the public interest,' " quoting *Wirtz v. Jones*, 340 F.2d 901, 904 (5th Cir.1965). The same considerations apply in this case in which national labor policies are at stake. Just as the Fair Labor Standards Act was enacted to promote an important public goal: the health, efficiency, and general well-being of employees, and § 217 of that act was enacted "as a necessary measure to assure compliance with and adherence to a public policy…" *Wirtz v. Jones*, 340 F.2d 901, 903 (5th Cir.1965), the Employee Retirement Income Security Program, 29 U.S.C. §§ 1001–1381, was enacted to promote the continued well-being and security of employees, and § 1132 of that act was enacted to provide the appropriate remedies, sanctions, and ready access to the federal courts promised in 29 U.S.C. § 1001(b).

It is true that individual rights under the Employee Retirement Security Income Program derive from contracts between employers and employees and that vindication of the rights may be by private parties, such as the trustees of a fund. In these respects, the program differs from the Fair Labor Standards Act which sets out employment rights in statutes applicable to all covered employees, and which provides for enforcement by the Secretary of Labor. I do not believe that these differences are significant. In either case, what is at stake is the economic well-being of an employees who are entitled to minimum wages *and* to the pension and health benefits that have been promised them. The assurances of the Employee Retirement Security Income Program would be hollow if the courts could not enforce judgments against employers such as defendant who contest their contractual obligations for five years and then refuse to comply with the terms of the judgment entered against them.

I conclude that the nature of the remedy sought and obtained by plaintiffs and the importance of the public policy embodied in the Employee Retirement Income Security Program leave a district court no alternative in a situation such as this but to hold a hearing to determine whether the defendant is in civil contempt. *See* generally Rule 65, Federal Rules of Civil Procedure; 7 Moore's Federal Practice, p. 65–1 *et seq.* *See also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 194–95, 69 S.Ct. 497, 501, 93 L.Ed. 599 (1949):

> If the court is powerless to require the prescribed payments to be made [under the Fair Labor Standards Act], it has lost the most effective sanction for its decree and a premium has been placed on violations.

*See also King v. Greenblatt*, 489 F.Supp. 105 (D.Mass.1980) (court authorized the plaintiff in a civil rights case to institute

civil contempt proceedings to compel payment of attorneys' fees ordered pursuant to the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988):

if a judgment for the payment of money represents a sum payable because of a defendant's failure to perform a public obligation imposed by a statute, then in order to have "the most effective sanction" for the court's judgment, it is permissible to vindicate the public policy embodied in the statute by instituting a proceeding for civil or criminal contempt.

*Id.,* 489 F.Supp. at 107. However, because the wording of the final judgment in this case may not have given defendant fair notice of its obligations under that judgment, I will not proceed with a contempt hearing until the defendant has been apprised of those obligations and has had a chance to re-evaluate its response.

*2. Contempt for Failure to Comply with Court's Order to Pay Attorneys' Fees*

■ An award of attorneys' fees is authorized explicitly in cases brought under 29 U.S.C. § 1132. An award of attorneys' fees is "compensatory rather than punitive and constitutes an appropriate item of damages to be awarded by courts in enforcement of the national labor policy." *International Brotherhood of Electrical Workers Local Union No. 2022 v. Teletype Corporation, Little Rock, Arkansas,* 551 F.Supp. 676, 681 (E.D.Ark.1982).

The order awarding attorneys' fees to plaintiffs was designed to further the benefit rights of employees. 29 U.S.C. § 1001 (1982). If the payment of lawfully ordered attorneys' fees could not be compelled, pension fund fiduciaries would be deterred from vindicating their rights, especially where, as in the present case, the litigation has extended over a period of five years and no money has been paid. Even if the plaintiffs had not initiated an action for contempt, I could act independently to hold defendant in contempt. "For the court need not sit supinely by waiting for some litigant to take the initiative. Vindication of its authority through enforcement of its decree does not depend on such whimsical

or fortuitous circumstances." *McComb v. Jacksonville Paper Co.,* 336 U.S. at 194, 69 S.Ct. at 501.

If the award of attorneys' fees placed an intolerable burden upon defendant, it could have moved the court for modification of the order. However, defendant has filed no motion, has made no payment, and gives no indication that payment will be forthcoming. Thus, I conclude that a hearing should be held on plaintiffs' motion for an order to defendant to show cause why it should not be held in contempt for its failure to pay plaintiffs their attorneys' fees.

### ORDER

IT IS ORDERED that the judgment entered herein on February 10, 1984, is AMENDED to read as follows:

Judgment is entered for plaintiffs and against defendant. Defendant, its officers, agents, employees, and attorneys, are enjoined permanently from failing to comply with defendant's obligations to pay contributions to plaintiffs as such contributions become due and are enjoined permanently from failing to make regular reports of employment information as required by the collective bargaining agreement and the Central States Southeast and Southwest Areas Health and Welfare Fund Trust Agreement. Further, defendant, its officers, agents, employees, and attorneys, are enjoined permanently from continuing to withhold from the Central States, Southeast and Southwest Areas Health and Welfare Fund defendant's past due contributions plus interest and liquidated damages in the total amount of $36,408.81.

IT IS FURTHER ORDERED that defendant Labar Transportation Company show cause why it should not be held in contempt for its failure to pay the award of attorneys' fees at a hearing to be held in the United States District Court for the Northern District of Illinois on March 1, 1985 at 11:00 a.m.

IT IS ORDERED that if, after thirty days from the date of entry of the amended

judgment herein, defendant has not complied with the terms of the amended judgment, plaintiffs may renew their motion for an order to show cause why defendant should not be held in contempt for its failure to comply with the final judgment of this court, and the hearing on that motion will be held at the United States District Court for the Northern District of Illinois on March 1, 1985, at 11:00 a.m.