**LOWEL–LIGHT MANUFACTURING, INC., Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORP., as Receiver for Bank of New England in Liquidation, Defendant.**

Civ. A. No. 91–10375–WGY.

United States District Court, D. Massachusetts.

March 11, 1994.

John J. Regan, Hale & Dorr, Boston, MA, for plaintiff.

Paul R. Gupta, Nutter, McClennen & Fish, Thomas J. Morrissey, Sherin & Lodgen, Boston, MA, for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The plaintiff, Lowel–Light Manufacturing, Inc. ("Lowel–Light"), originally brought this action in the Barnstable Superior Court against the Bank of Cape Cod, alleging negligence, breach of fiduciary duty, and violation of Mass.Gen.L. ch. 93A, § 11 in connection with the disbursement of funds from an escrow account held by the bank. *Lowel–Light Manufacturing, Inc. v. Bank of Cape Cod,* Barnstable Civil Action No. 87–828 (Mass.Superior Ct., filed Sept. 24, 1987). During the pendency of the Superior Court action the original defendant, Bank of Cape Cod (the "Bank"), was acquired by Bank of New England. On February 4, 1991, the present defendant, Federal Deposit Insurance Corporation ("FDIC"), as receiver for Bank of New England in liquidation, removed this action to the United States District Court and substituted itself for the Bank as the proper defendant.

Lowel–Light moves for summary judgment (Docket No. 2, filed July 19, 1991). *See also* plaintiff's statement of undisputed material facts (Docket No. 3, filed July 19, 1991), plaintiff's memorandum in support of its motion and plaintiff's appendix in support of both its motion and memorandum (Docket No. 4, filed July 19, 1991). The FDIC then filed a cross motion for summary judgment (Docket No. 7, filed August 30, 1991). *See also* defendant's statement of genuinely dis-

puted material facts (Docket No. 8, filed August 30, 1991), plaintiff's reply memorandum in support of its motion for summary judgment and in opposition to defendant's cross motion for summary judgment (Docket No. 12, filed September 18, 1991), and defendant's supplemental memorandum (Docket No. 14, filed September 18, 1991).

## UNDISPUTED FACTS

Upon this record, the following facts appear undisputed. Lowel–Light is a New York corporation engaged in the business of manufacturing lighting equipment. On or about March 29, 1985, Lowel–Light brought suit against a Massachusetts corporation, Super Hoof, Inc. ("Super Hoof") in Barnstable Superior Court to recover monies owed Lowel–Light for lighting equipment sold to Super Hoof. On June 25, 1985, after Super Hoof failed to answer the complaint, Lowel–Light obtained a default judgment against Super Hoof in the amount of $29,125.34. (Complaint ¶ 4; Appendix, Tab 1).

In January, 1985, three of Super Hoof's shareholders and directors brought an action in the Barnstable Superior Court against Super Hoof and one David Sigler, the former President and CEO of Super Hoof, seeking damages and injunctive relief for the misappropriation of Super Hoof assets (the "shareholders action"). (See Docket No. 12, Exhibit A). On or about February 1, 1985, the Barnstable Superior Court ordered the defendants in the shareholders' action to place $100,000 in an interest bearing account at Merchant's Bank, the predecessor to the Bank of Cape Cod. The order provided that the sum would be

> payable to the plaintiffs upon presentation of a judgment in their favor; said payment to be made only in the amount of the judgment and the balance returnable to the defendants or by further stipulation of the parties hereto.

(Appendix, Exhibit C).

To comply with the Superior Court's order, attorneys for the parties in the shareholders action opened an escrow account at the Bank in February, 1985. On February 11, 1985, $100,000 was deposited by wire into the account. (Deposition of James Anthony, Vol. I at 14, and Appendix, Tab 2). The funds deposited were assets of Super Hoof obtained in the ordinary course of business. (Affidavit of Thomas A. Butler, Esq., filed September 18, 1991).[1] The signature card accompanying the account described "Michael J. Princi and Robert G. Clerk, Escrow for Shakalis v. Super Hoof, Inc." The reverse of the card listed the employer or business of the depositor as "lawyer." (Appendix, Tab 2).

On October 7, 1985, Lowel–Light, as a judgment creditor, obtained a writ of execution from the Clerk's office of the Barnstable Superior Court and levied "upon the right, title and interest the said Judgment Debtor Super Hoof, Inc., has to any account at the Bank of Cape Cod." (Appendix, Exhibits D, E; Anthony Dep., Appendix, Tab 5 at 1).

James Anthony, the Senior Vice President for the Bank, received the Sheriff's levy and forwarded it to the Bookkeeping Department. The Bookkeeping Department informed Mr. Anthony that there were no accounts in the name of Super Hoof. Mr. Anthony then referred the levy to the Bank's attorney, Mr. Farrell. (Anthony Dep., Appendix, Tab 5 at 50–51).

On December 10, 1985, the Bank honored a certified check drawn on the account in the amount of $100,813, signed by both Robert Clark and Michael J. Princi, which closed the Escrow Account. (Anthony Dep., Appendix, Tab 4 at 14, Tab 6 at 53).

No monies were paid by the Bank from the Escrow Account to Lowel–Light in satisfaction of its default judgment and execution.

## ANALYSIS

Summary judgment, of course, is appropriate if the Court finds that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Lowel–

---

1. This Court denies the FDIC's motion to strike the Butler affidavit, Docket No. 15, filed September 23, 1991.

Light asserts that there are no genuine issues of material fact in dispute and that summary judgment should be entered in its favor on its claims for negligence, breach of fiduciary duty, and violation of Mass.Gen.L. ch. 93A.

■ Upon the self-same record, the FDIC moves for summary judgment in its favor upon all three claims. While the standard for action upon cross motions for summary judgment is identical to that for an individual motion, the Court must handle each of the cross motions as if they were two distinct, independent motions. *Arnold Pontiac–GMC v. General Motors,* 700 F.Supp. 838, 840 (W.D.Pa.1988). Thus, in evaluating each motion, the Court must consider the facts and inferences in the light most favorable to the nonmoving party. *Continental Grain Co. v. Puerto Rico Maritime Shipping Auth.,* 972 F.2d 426, 431 (1st Cir.1992).

■ In order to succeed on its negligence claim, Lowel–Light must show (1) the Bank owed a legal duty of care to Lowel–Light; (2) the Bank breached that duty; (3) proximate or legal cause; and (4) actual damage or injury. *See* W. Prosser and W. Keeton, *The Law of Torts* § 30 (5th ed. 1985).

First, Lowel–Light must establish that the Bank owed Lowel–Light a duty of care. *Schmid v. National Bank of Greece, S.A.,* 622 F.Supp. 704, 712 (D.Mass.1985), *aff'd,* 802 F.2d 439 (1st Cir.1986) (citing *Brown v. Kendall,* 60 Mass. 292 [1850] ). Lowel–Light asserts that the Bank owed it two legal duties: (1) a duty reasonably to respond to the writ of execution served upon the Bank, and (2) a duty to act pursuant to the Court Order governing the disbursement of funds in the Escrow Account. Lowel–Light argues that the writ of execution served upon the Bank effected a valid lien on the Escrow Account and imposed a duty on the Bank to avoid disbursing funds from the Escrow Account either in violation of the lien or in violation of the Court Order mandating the creation of the Escrow Account.

■ The FDIC contends that the writ used by Lowel–Light was ineffective because it failed to file a bond. The FDIC has proffered no evidence to support a finding that Lowel–Light would not have filed a bond had the Bank identified the Escrow Account. Similarly unpersuasive is the contention of the FDIC that the Escrow Account cannot be attached because Princi and Clark are not parties to the suit in which the default judgment issued. The account, although under the names of Princi and Clark, was one "for the account of" Super Hoof, a party.

■ The FDIC also argues that a Massachusetts banking statute shields the Bank— and thus the FDIC—from liability in this situation. The statute states in relevant part:

No bank, ... shall be required to recognize an adverse claim to a deposit standing on ... its books ... for the account of any person, except by virtue of the service upon ... it of *appropriate process* issued by a court of competent jurisdiction in a suit or action *to which such person ... has been made a party,* unless the adverse claimant *gives bond* satisfactory to the depository and the adverse claimant to hold harmless and indemnify it from any liability, loss, damage, costs and expenses whatsoever on account of such adverse claim....

Mass.Gen.L. ch. 167D, § 31 (emphasis added). The FDIC asserts that Lowel–Light did not serve the Bank with appropriate process because the writ described the account to be levied upon as one in the name of Super Hoof, not Princi and Clark. (Docket No. 7 at 6).

The wording of the writ, however, did not render the process inappropriate. The writ made an all-encompassing reference to the "right, title and interest" which Super Hoof had to any accounts at the Bank and this was sufficient to identify the Escrow Account. As will be seen, however, the "appropriate process" under Mass.Gen.L. ch. 167D, § 31 should have been trustee process, not a writ of execution.

■ In general, a levy on the property of a judgment debtor gives the execution creditor a lien on the property. 33 C.J.S. *Executions* § 123 (1942). The FDIC argues that Lowel–Light could not create a valid lien on the account because the funds were *in*

*custodia legis,* i.e. in the custody of the court and, as such, unable to be reached by creditors. (Docket No. 7 at 10).

Lowel–Light counters by arguing that an exception to the rule of *in custodia legis* entitles them to attach the property. That exception entitles an officer holding property for the court to make successive attachments upon the property for the benefit of different creditors of the same judgment debtor. *See Adamian v. Hassanoff,* 189 Mass. 194, 196, 75 N.E. 126 (1905). *Adamian* involved a bill to reach and apply, but arguably another method of attachment could be used as well.

This Court need not resolve the question of whether Lowel–Light successfully attached funds *in custodia legis.* Although the funds were deposited pursuant to a Court Order, the funds were not held in the custody of the Court. The funds were in the custody of the Bank, Princi, and Clark. The Court is not custodian of funds deposited at its direction. The facts of this case are not analogous to *Adamian,* which involved property (oriental rugs, not bank accounts) actually impounded by the office of the clerk of court. As such, determination of the legal issues arising when property is *in custodia legis* is not necessary to the resolution of this dispute. Massachusetts law recognizes that the levy creates a lien on "All property which by common law is liable to be taken on execution, [and] may be taken and sold thereon...." Mass.Gen.L. ch. 235, § 31. Since Mass.Gen.L. ch. 235, § 34 exempts deposits in a banking institution up to $125, Lowel–Light argues that deposits above $125 are implicitly subject to execution.

■ More is required, however, under the First Circuit's view of Massachusetts law. In *Gabovitch v. Lundy,* 584 F.2d 559 (1st Cir.1978), appellant obtained a money judgment against the appellee and obtained a writ of execution from the Clerk of the District Court certifying a levy on the bank account of appellee. The First Circuit held the writ of execution ineffective against the bank. The court reasoned:

**2.** The Massachusetts Rules of Civil Procedure are properly cited as "Mass.R.Civ.P." *See* Mass.

Under Massachusetts law, attachment of bank accounts takes place by trustee process. Mass.Gen.Laws Ann. ch. 246. Attachment on trustee process requires court approval. Mass.Rules Civ.Proc. [sic][2] 4.2(c).... [A] writ issued solely on the authority of a court clerk has no effect on a bank account under Massachusetts law....

*Id.* at 561.

Lowel–Light's writ of execution was issued by an assistant clerk in the Barnstable Superior Court. (Appendix, Exhibit D). The writ was directed at funds held in a bank account at Cape Cod Bank. Following the reasoning of *Gabovitch,* Lowel–Light's writ created no lien on the Escrow Account.

Lowel–Light argues that the funds in this case were not required to be attached by trustee process and, therefore, the ruling in *Gabovitch* is not controlling. (*See* Docket No. 12, ¶ 18). Funds are not attachable by trustee process where the funds are in the hands of a public officer who is accountable to the defendant only as an officer. Mass. Gen.L. ch. 246, § 32. Lowel–Light argues that the attorneys for the parties in the shareholders action held the funds for Super Hoof as public officers since the Escrow Account was created pursuant to Court Order and therefore such funds are not attachable by trustee process but may be taken upon execution.

This argument is unpersuasive. The public officer exception to this statute applies to actual public officers, not to the lawyers of the parties. *See Traveler's Ins. Co. v. Maguire,* 218 Mass. 360, 362, 105 N.E. 1023 (1914) (commissioner appointed by Probate Court); *Burnham v. Beal,* 96 Mass. (1 Allen) 217, 218 (1867) (trial justice); *Chealy v. Brewer,* 7 Mass. 259, 259 (1811) (county treasurer). The public officer exception to the trustee process statute being inapplicable, the writ of execution issued by the Barnstable Superior Court was ineffective to attach the funds.

R.Civ.P. 85.

█ Since the writ of execution imposed no legal duty on the Bank, Lowel–Light is left with the assertion that "the Court Order establishing the Escrow Account created a significant legal duty on the part of the Bank to act in strict compliance with the terms of that Order." (Docket No. 4 at 10). Lowel–Light has proffered insufficient evidence to support a finding that this Court Order created a legal duty of care on the part of the Bank.

The Court Order was directed at the defendants in the Shareholder Litigation (i.e. Sigler and Super Hoof), not the Bank. The Bank was not a party to that suit. There is no evidence that the Bank even knew of the Court Order. Lowel–Light asserts in its statement of undisputed material facts that the Senior Vice President of the Bank who received the levy did not know that the levy referred to an account set up pursuant to a Court Order. (Docket No. 3, ¶ 21).

What is more, while a Bank is, of course, under a legal duty to act in compliance with the terms of an escrow agreement to which it is a party, *see Schmid*, 622 F.Supp. at 710 (a depository must act in strict compliance with the terms of an escrow agreement), here Lowel–Light itself asserts in its statement of undisputed material facts that there was no bank escrow agreement for the account in question, nor did the Bank require one. (Docket No. 3, ¶¶ 12 and 13). Therefore, the Bank owed no duty to Lowel–Light which could be breached. Similarly, in the absence of any evidence to show that the Bank voluntarily assumed the role of escrow agent, it appears that the true escrow agents were Princi and Clark and that the Bank was merely the depository where the funds were held. *See* 28 Am.Jur.2d, *Escrow* § 16 (1966).

█ Finally, Lowel–Light argues that "a levy on the property of a judgment debtor *ordinarily* ... gives the execution creditor a lien thereon which is a vested right." 33 C.J.S. *Executions* § 123 (1942) (emphasis added). Although Super Hoof was the source of the funds which were deposited in the Escrow Account, those funds were not the "property" of Super Hoof once deposited in the Escrow Account. The Escrow Account was not in the name of Super Hoof, but in the name of Princi and Clark. The funds were being held pursuant to Court Order for the benefit of the plaintiffs in the Shareholder Litigation. Super Hoof was unable to use those funds for any purpose prior to the resolution of the Shareholder Litigation. Thus, the funds in the Escrow Account were not "property" of Super Hoof subject to attachment.

Despite all its efforts, Lowel–Light has been unable to establish any legal duty owed by the Bank to it.

Accordingly, both Lowel–Light's negligence claim and its claim for breach of fiduciary duty—which likewise necessarily founders in the absence of any duty owed by the Bank to it—fail.

█ Further analysis, however, is required with respect to the Chapter 93A claim since that claim need only arise within the penumbra of a recognized common law duty. *Dahlborg v. Middleborough Trust Co.*, 16 Mass.App.Ct. 481, 486, 452 N.E.2d 281 (1983). Here, however, since the Bank had no duty to act upon a writ of execution which was ineffective to attach the Escrow funds, the Bank has not engaged in any unfair act or practice by not disclosing the existence of Super Hoof's interest in the Escrow Account.

## CONCLUSION

Since there are no genuine issues of material fact in dispute, Lowel–Light's motion for summary judgment fails and summary judgment must, and hereby does, enter for the FDIC on all counts.